IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

NOEMI ESTHER APONTE-MORALES,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

CIVIL NO. 19-1563 (GLS)

**OPINION AND ORDER**

Plaintiff Noemí Esther Aponte-Morales ("Plaintiff") seeks judicial review of the denial of her application for disability insurance benefits by the Commissioner of the Social Security Administration ("Commissioner"). Docket No. 3. On September 2, 2020, Plaintiff filed a motion requesting the Court to reverse the Commissioner's final decision denying disability benefits because the decision was unsupported by substantial evidence as required by 42 U.S.C. § 405(g). Docket No. 25. The Commissioner opposed (Docket No. 26) and both parties had the opportunity to present oral arguments during a hearing held on June 11, 2021. Docket No. 33.

The parties consented to the entry of judgment by a United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c). Docket No. 5. After careful consideration of the administrative record, the briefs on file and the arguments raised by the parties during the hearing, the Commissioner's decision denying disability benefits is **REVERSED** and the case is **REMANDED** for further administrative proceedings consistent with the Court's opinion.

### I.   PROCEDURAL BACKGROUND

Plaintiff worked as a sewing machine operator at various clothing manufacturing sites since 1974, and her last day of employment was April 18, 2012 (Tr. 43-45[1]; 680). On May 8, 2015, Plaintiff filed an application for disability insurance benefits due to arthritis, low back pain and spasms, leg numbness, discs disease, high blood pressure and diabetes (Tr. 667-668, 679, 540-541). Initially, Plaintiff's disability claim did not include her mental condition. However, Plaintiff

---

[1] "Tr." refers to the transcript of the record of proceedings.

included her mental condition as a medically determinable impairment in the Disability Insurance Benefits claim (Tr. 551). Plaintiff claims that her disability began on July 1, 2013 (Tr. 667). Plaintiff's application was denied initially and upon reconsideration (Tr. 585-588, 590-592). Thus, Plaintiff requested a hearing which was held via videoconference on January 26, 2018 before Administrative Law Judge Livia García ("ALJ") (Tr. 37-65, 593-594). During the hearing, Plaintiff– who was represented by a non-attorney representative— presented her testimony and responded to questions posed by the ALJ (Tr. 37-65). Vocational Examiner Susan Galden also testified during the hearing via telephone conference (Tr. 61-65).

On February 28, 2018, the ALJ issued a decision finding that Plaintiff was not disabled, as defined in the Social Security Act, at any time from the onset date of July 1, 2013 through the last date insured, December 31, 2017 (Tr. 21-30). Plaintiff asked the Appeals Council to review the final decision issued by the ALJ. The Appeals Council denied this request on April 6, 2019 (Tr. 1-4), making the Commissioner's decision the final decision for review by this Court. On June 10, 2019, Plaintiff filed the Complaint, which the Commissioner answered on April 8, 2020, and both parties filed supporting memoranda. Docket Nos. 3, 11, 25 and 26.

## II. LEGAL FRAMEWORK

### A. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court is empowered to affirm, modify, reverse, or remand the decision of the Commissioner based upon the pleadings and transcript of the record. 42 U.S.C. § 405(g). In reviewing a Social Security decision, the Court's role is limited to deciding whether the ALJ's decision is supported by substantial evidence in the record and based on a correct legal standard. See Id.; Seavey v. Barnhart, 276 F. 3d 1 (1st Cir. 2001); Manso-Pizarro v. Secretary of Health & Human Services, 76 F. 3d 15, 16 (1st Cir. 1996); Ortiz v. Secretary of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991). The Commissioner's findings of fact are conclusive when supported by substantial evidence but not when obtained by ignoring evidence, misapplying the law, or judging matters entrusted to experts. See Nguyen v. Chater, 172 F. 3d 31, 35 (1st Cir. 1999). "Substantial evidence" is more than a "mere scintilla"; it is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. See Purdy v. Berryhill, 887 F. 3d 7, 13 (1st Cir. 2018). As recently explained by the United States Supreme Court, under the substantial evidence standard, "a court looks to an existing administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations"

and "the threshold for such evidentiary sufficiency is not high". Biestek v. Berryhill, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019).

A determination of substantiality must be based on the record. See Ortiz v. Secretary of Health & Human Services, 955 F.2d 765, 769 (1st Cir. 1991). The Commissioner's findings must be upheld if a reasonable mind, reviewing the evidence in the record, could accept them as adequate to support his conclusion. See Rodríguez v. Secretary of Health and Human Services, 647 F. 2d 218, 222 (1st Cir. 1981). And even if there is also substantial evidence in support of plaintiff's position, which could arguably justify a different conclusion, the Court must uphold the ALJ's decision, if supported by substantial evidence. See 20 C.F.R. § 404.1546(c); Rodríguez Pagán v. Secretary of Health and Human Services, 819 F. 2d 1, 3 (1st Cir. 1987). Therefore, reversal of an ALJ's decision is warranted only if the ALJ made a legal error in deciding the claim or if the record contains no "evidence rationally adequate...to justify the conclusion" of the ALJ. Manso–Pizarro, 76 F.3d at 16.

In reaching the final decision, it is the Commissioner's responsibility to weigh credibility and to draw inferences from the evidence in the record. See Purdy v. Berryhill, 887 F. 3d 7 (1st Cir. 2018). Courts will not second guess the Commissioner's resolution of conflicting evidence. See Irlanda Ortiz v. Secretary of Health & Human Services, 955 F. 2d 765, 769 (1st Cir. 1991). Ultimately, the role of the Court is to determine "whether the final decision is supported by substantial evidence and whether the correct legal standard was used." Seavey v. Barnhart, 276 F.3d at 9.

### B. DISABILITY DETERMINATION BY THE SSA: FIVE STEP PROCESS

To receive benefits under the Social Security Act, the ultimate question is whether a claimant is disabled within the meaning of 42 U.S.C. § 423(d). That provision defines disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. See 42 U.S.C. § 423. The severity of the impairment must be such that the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial work which exists in the national economy." Deblois v. Secretary of Health and Human Services, 686 F.2d 76, 79 (1st Cir.1982) (quoting 42 U.S.C. § 423(d)(2)(A)). The claimant generally has the burden of proving that he has become disabled within the meaning

of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146 (1987); Rivera–Tufiño v. Commissioner of Social Security, 731 F.Supp.2d 210, 212–13 (D.P.R. 2010). Further, to be eligible for disability benefits, the claimant must demonstrate that his disability existed prior to the expiration of his insured status or his date last insured. See Cruz Rivera v. Secretary of Health & Human Services, 818 F. 2d 96, 97 (1st Cir. 1986).

In determining whether a claimant is disabled, the Commissioner engages in a five-step sequential evaluation. See 20 C.F.R. § 404.1520; Bowen, 482 U.S. at 140-142; Goodermote v. Secretary of Health and Human Services, 690 F.2d 5, 6–7 (1st Cir.1982). At step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity" and, if so, the claimant is not disabled. See 20 C.F.R. § 404.1520(b). If not engaged in substantial gainful activity, the decision-maker moves to the second step, where he must determine whether the claimant has a medically severe impairment or combination of impairments that significantly limit claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1520(c). A severe impairment is one that significantly limits a claimant's physical or mental ability to perform basic work activities. See López-González v. Comm'r of Soc. Sec., 59 F. Supp. 3d 372, 378 (D.P.R. 2014) (citing 20 C.F.R. § 404.1520(c)). The step two severity requirement entails a *de minimis* burden, which is designed to screen out groundless claims. Mateo Rivera v. Commissioner, 2020 WL 7786920, at * 3 (D.P.R.) (citing McDonald v. Sec'y of Health and Human Servs., 795 F.2d 1118, 1123 (1st Cir. 1986)).

If the impairment or combination of impairments is severe, the third step applies. At this point, the ALJ must determine whether the claimant's severe impairments meet the requirements of a "listed impairment", which the Commissioner acknowledges are so severe as to preclude substantial gainful activity. See 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, Subpart P, App. 1. If the claimant has a "listed impairment", or an impairment equivalent in severity to a "listed impairment", the claimant is considered disabled. If the claimant's impairment does not meet the severity of a "listed impairment", the ALJ must determine the claimant's Residual Function Capacity ("RFC"). See 20 C.F.R. § 404.1520(e). An individual's RFC is his or her ability to do physical and mental work activities on a sustained basis despite limitations due to impairments. See 20 C.F.R. §§ 404.1520(e) and 404.1545(a)(1). At step four, the ALJ must determine, taking into consideration the RFC, whether the claimant can perform past relevant work. See 20 C.F.R. §§ 404.1520(f) and 416.920(f). If not, then the fifth and final step applies.

At steps one through four, the claimant has the burden of proving he cannot return to his former employment because of the alleged disability. See Santiago v. Secretary of Health & Human Services, 944 F. 2d 1, 5 (1st Cir. 1991). However, the Commissioner has the burden under step five to prove the existence of other jobs in the national economy that claimant can perform, in view of claimant's RFC, age, education and work experience. See 20 C.F.R. § 404.1520(g); Ortiz v. Secretary of Health & Human Services, 890 F. 2d 520, 524 (1st Cir. 1989). If there are none, the claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(f).

### III.   DISCUSSION

Plaintiff does not object to the ALJ's determination as to her physical disability. The request for remand is based solely on the ALJ's determination regarding Plaintiff's mental impairment. Thus, the Court's analysis here is limited to the ALJ's findings regarding Plaintiff's mental impairment.

**A. THE ALJ DECISION**

Applying the five-step sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability through her last date insured (Tr. 23-24) and proceeded to step two of the analysis.

At step two, the ALJ determined that Plaintiff had the following severe impairments: spine disorders, right shoulder tendinitis, osteoarthritis, right arm radiculopathy, arthritic degenerative changes in multiple joint; and the following non-severe impairments: status post breast lumpectomy in 2017, type II diabetes, hypertension, bronchial asthma, arteriosclerotic vascular disease, and major depressive disorder (Tr. 24). The ALJ found that Plaintiff's major depressive disorder was non-severe under 20 C.F.R. §404.1520a(d)(1) after considering four broad areas of mental functioning, known as the "paragraph B criteria": (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing themselves (Tr. 24). See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00. The ALJ determined that Plaintiff's medically determinable mental impairment caused no more than mild limitations in her ability to perform basic mental work activities and was therefore non-severe (Tr. 24). To reach this conclusion, the ALJ generally cited Plaintiff's medical records from American Psychiatric Systems ("APS"), Inspira, and the report rendered by Dr. Luis Saliceti-Rivera, Clinical Psychologist ("Dr. Saliceti") (Tr. 24 ref. to. 878-1019; 1259-1306). But, as discussed more fully below, despite a general and conclusory reference to Plaintiff's mental

5

health records, a careful review of the ALJ's analysis reveals that the ALJ's findings as to the severity of Plaintiff's mental health condition was primarily based on the records of non-mental health physicians.

In the first area of functioning—understanding, remembering, or applying information—the ALJ found that Plaintiff had a mild limitation because the medical records demonstrated that she did not have difficulty understanding or following instructions (Tr. 24). The ALJ noted that when Plaintiff attended medical examinations, she demonstrated an ability to follow instructions, comply with treatment, concentrate, and pay attention. Id. In support, the ALJ cited medical records from the following physicians, none of whom are mental health treating physicians: Dr. Roberto Gándara/Tiger Medical Corporation, General Physician ("Dr. Gándara"), Dr. José Martinó, Anesthesiologist/Pain Management ("Dr. Martinó"), Dr. Zaida Boria, Neurologist ("Dr. Boria"), and Dr. Yarelis Pérez Rivera, Internist ("Dr. Pérez") (Tr. 24 ref. to 809-860; 861-875; 1021-1029, 1042-1050; 1063-1117; 1118-1185). The ALJ did not refer to ample notes from Plaintiff's mental health treating physicians on the record.

As to the second area of functioning—the ability to interact with others— the ALJ found that Plaintiff was mildly limited because the medical records show that she was cooperative, well behaved, and did not have difficulty socializing or getting along with others (Tr. 24). Plaintiff agreed with the ALJ's assessment of this broad area of functioning. See Docket No. 25 at page 11.

In the third functional area— concentrating, persisting, or maintaining pace— the ALJ also found that Plaintiff had mild limitations because during her medical visits she showed little difficulty with attention and concentration (Tr. 24 ref. to 809-860; 861-875; 1063-1117; 1118-1185), and, because in the examinations performed by Consultative Examiners Dr. Saliceti, the only mental health professional referenced by the ALJ in her analysis, and Dr. Boria, Plaintiff demonstrated no difficulty with attention, concentration and memory (Tr. 24 ref. to 1010-1029). The ALJ concluded that Plaintiff could sustain the attention and concentration required to complete both the simple and complex tasks commonly found in the work setting to which Plaintiff was accustomed (Tr. 24-25).

Finally, as to the fourth functional area, the ALJ concluded that Plaintiff had a mild limitation in her ability to adapt or manage herself and that, except for her pain, Plaintiff reported little difficulty taking care of herself (Tr. 25). Specifically, the ALJ noted that Plaintiff was observed to have been properly dressed and clean; and that the medical evidence did not establish

6

that Plaintiff struggled with emotions or self-control or that she displayed unusual or bizarre behavior, suicidal or homicidal tendencies. Id. The ALJ again cited to medical records from Dr. Gándara, Dr. Martinó, Dr. Boria, and Dr. Pérez. No mental health records were cited in support of this conclusion.

At the conclusion of the step two analysis, the ALJ stated:

> the limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96–8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation I have found in the 'paragraph B' mental function analysis. (Tr. 25).

At the third step, the ALJ deemed that Plaintiff did not have an impairment or combination of impairments that met the severity of a "listed impairment" in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 25). Having concluded step three of the analysis, the ALJ proceeded to determine Plaintiff's RFC (Tr. 25-26). The ALJ stated in her opinion that, in formulating the RFC, she had to consider all impairments, including those that were non-severe (Tr. 23) and, as previously stated, that her findings at step two regarding Plaintiff's mental functioning were also considered in formulating the RFC. The ALJ concluded that Plaintiff had the RFC to perform light work, as defined in 20 C.F.R. §404.1567(b), and had the capacity to perform the following tasks: frequently climb stairs and occasionally ladders, ropes or scaffolds; frequently balance, stoop, and kneel; occasionally crouch and crawl; frequently overhead reach with the left upper extremity and occasionally with the right upper extremity; frequently handle with both hands; occasionally be exposed to certain environmental pollutants and pets; and occasionally be exposed to unprotected heights due to alleged occasional sleepiness (Tr. 26). The ALJ did not include an independent analysis regarding Plaintiff's mental impairment at step four, which had been previously deemed non-severe  (Tr. 26-29).

After concluding the RFC analysis, the ALJ deemed that claimant was able to perform her past relevant work as a sewing machine operator (Tr. 30). Consequently, the ALJ held that Plaintiff was not disabled within the meaning of the Social Security Act. Id.

## B. PLAINTIFF'S ALLEGATIONS OF ERROR

Plaintiff sustains that the ALJ erred on two grounds: (1) by determining that Plaintiff's mental impairment was non-severe, and (2) by failing to address the credited mental functional limitations in the RFC formulation.

### 1. Severity of Plaintiff's Mental Condition

At step 2 of the sequential analysis, the ALJ concluded that Plaintiff's major depressive disorder was non-severe pursuant to 20 C.F.R. 404.1520(c) and SSRs 85-28 and 96-3p, and that it caused Plaintiff no more than minimal limitations in all four broad areas of mental functioning (Tr. 24-25). However, a review of the record reveals that the ALJ's decision with respect to the severity of Plaintiff's mental condition was not based on substantial evidence. The decision was based primarily on medical records of non-mental health physicians and on the opinion of non-treating State Agency Consultants ("SAC") who failed to consider at least 21 months of Plaintiff's psychiatric treatment. Taken together, these two sources of medical records cannot reasonably and adequately support a conclusion that Plaintiff's mental impairment was non-severe; rendering the ALJ's decision without substantial evidence for the Court to affirm.

As discussed in the previous section, the ALJ's analysis at step two regarding Plaintiff's four broad areas of mental functioning was, despite the availability of ample mental health medical files, oddly and primarily premised on medical files from physicians who routinely evaluated Plaintiff's non-exertional conditions and that, as part of a general physical examination, found that she was alert and oriented (Tr. 24-25 ref. to 809-860; 861-875; 1063-1117; 1118-1185). Other than that, the ALJ relied— not only at step two but also at step four (RFC determination)— on the great weight[2] imparted on the SAC's opinions that Plaintiff's mental condition was non-severe (Tr. 25). The ALJ gave the SAC's opinions great weight when determining the severity of Plaintiff's mental condition because their opinions were consistent with the overall record suggesting that Plaintiff's mental treatment had always been for a mild mental disorder and that Plaintiff had never required

---

[2] Plaintiff's claim was filed before March 27, 2017; therefore, the older regulations apply (20 C.F.R. § 404.1527; see Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017)), and the ALJ had to give controlling weight to the treating physician's opinion on the issue of the nature and severity of the impairment. To justify giving controlling weight to non-treating physicians (such as the SAC), the ALJ had to apply the factors listed in 20 C.F.R. § 404.1527(c)(1)-(6); to wit, length of treatment and frequency of examination, nature and extent of treatment relationship, evidence in support of medical opinion, consistency of the medical opinion with the record, the medical source's specialty, and other factors. This the ALJ did not do.

crisis intervention treatment nor mental hospitalization (Tr. 25). But such opinions are lacking. They fail to consider at least 21 months of Plaintiff's mental health progress notes.

On July 23, 2015, at the initial level of the Disability Insurance Benefits determination, SAC Dr. Bárbara Hernández determined that Plaintiff's mental condition was non-severe because: (1) her emotional symptoms were secondary to her physical conditions, (2) she was not under any current mental treatment nor was using mental prescriptions; and (3) despite the Consultative Examiner's clinical findings, she had been recently described by her treating physician as in a *full remission* of her emotional symptoms (Tr. 552, emphasis in original). Furthermore, on February 10, 2016, at the reconsideration level, SAC Dr. Gladys M. Jiménez Nieves confirmed that the updated records from APS, Inspira and the reports rendered by Consultative Examiners supported a non-severe determination regarding Plaintiff's mental condition (Tr. 570-573). However, a careful examination of the records from APS and Inspira reveals that there was substantial evidence of Plaintiff's mental health treatment during the period at issue that was ignored by the SAC and, consequently, by the ALJ.

The relevant claim period in this case was from July 1, 2013 until the last insured date of December 31, 2017. From 2013 until 2015, Plaintiff was treated at the APS Clinic. From June 25, 2015 until the last insured date, Plaintiff was treated at Inspira. By July 1, 2013, Plaintiff was diagnosed with major depressive disorder recurrent episode without apparent improvement (Tr. 910-911). The notes reflect that Plaintiff's unemployment worsened her emotional condition. Id. By September 30, 2013, Plaintiff was still diagnosed with depression, with no signs of improvement (Tr. 908-909). In 2014, Plaintiff's diagnosis of depression was confirmed in four different evaluations (Tr. 888-892; 896; 904-907). Indeed, the last evaluation of December 2014 informs that Plaintiff was in partial remission (Tr. 892) and, by March 31, 2015, Plaintiff's major depressive disorder was found in full remission (Tr. 1005-1007). But less than three months later, by June 25, 2015, Plaintiff was once again diagnosed with major depressive and anxiety disorder (Tr. 1261-1264). Plaintiff reported hallucinations (Tr. 1261). In her follow up appointment, on July 7, 2015, Plaintiff was found stable with treatment and the depression diagnosis was maintained (Tr. 1265-1266). By September 8, 2015, Plaintiff again reported auditive hallucinations (Tr. 1267-1268). Plaintiff was prescribed antipsychotic medication (Tr. 1268). At follow up appointments in September, November and December 2015 and February 2016, Plaintiff's diagnosis and treatment plan remained the same (Tr. 1269-1276). On March 8, 2016, Plaintiff reported certain anxiety

episodes that led the psychiatrist at Inspira to increase the dosage of the antianxiety medication (Tr. 1277-1278). Follow up evaluations from April, June, July, October, November, and December 2016 reveal that Plaintiff's diagnosis and treatment plan remained the same (Tr. 1279-1288). A progress note from February 2017 reveals that Plaintiff was cooperative and had adequate behavior, but appeared sad, disheveled, and restricted (Tr. 1295). And an evaluation from June 26, 2017, shows that Plaintiff's diagnosis and treatment plan remained the same (Tr. 1297-1298). On October 25, 2017, Plaintiff reported symptoms of anxiety and auditive hallucinations, and she was diagnosed with severe major depression with psychotic behaviors (Tr. 1299-1302). Lastly, by November 30, 2017— one month before the last insured date— Plaintiff was referred for a partial hospitalization (Tr. 1305-1306).

Per the foregoing account of the mental health evidence on record, it is evident that the SAC's opinions were based on a *significantly and substantially* incomplete file. The initial determination by SAC Hernández concluding that Plaintiff's mental condition was non-severe was on July 23, 2015 (Tr. 552).[3] And the decision on reconsideration by SAC Jiménez considered records from Inspira from July 2015 to December 2015 (Tr. 571). There is thus no question that the SAC's opinions did not consider treatment notes from February 16, 2016 until November 30, 2017— a year and nine months of Plaintiff's relevant psychiatric treatment. And evidence reveals that during those 21 months of treatment Plaintiff's mental health required increase medication dosages or the inclusion of antipsychotic medications. And, importantly, only one month prior to the last insured date, Plaintiff was referred for a partial hospitalization.

The Court is aware that an ALJ determination is not erred simply because a non-examining source— such as the SAC— does not review the complete case record. See Bourinot v. Colvin, 95 F. Supp. 3d 161 (D. Mass. 2015). However, the ALJ based her decision on the opinions of SAC, to which she afforded great weight, but who did not evaluate at least 21 months of Plaintiff's relevant psychiatric treatment. The ALJ's conclusion that Plaintiff's mental impairment is non-severe cannot stand by ignoring this evidence. Therefore, the conclusion is not supported by substantial evidence. See Tejedor-Dávila v. Comm'r of Soc. Sec., 2020 WL 4574922 at *8 (D.P.R. Aug. 6, 2020) (citing Nguyen v. Chater, 172 F. 3d 31, 35 (1st Cir. 1999) (an ALJ is not at liberty

---

[3] SAC Hernández's conclusion of non-severity was based, at least partially, on the fact that Plaintiff was not under any current mental treatment nor was using mental prescriptions and on full remission (Tr. 552). However, this is certainly not what records from Inspira from 2015 through 2017 reflect. Consideration of those records was essential to any determination as to severity.

to "ignore medical evidence")); see also 20 C.F.R. § 404.1520(a) ("In making a determination as to whether a claimant is disabled, all of the evidence in the record must be considered."). Resting on an incomplete medical record, as the ALJ did in this case, is simply not substantial evidence for a decision. Tejedor-Dávila, 2020 WL 4574922 at *8 (citing Mary K v. Berryhill, 317 F. Supp. 3d 664, 667–68 (D.R.I. 2018)) (ALJ denial was not based on substantial evidence where ALJ relied exclusively on non-examining state agency physicians who did not have the entire record before them when forming their opinions); Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 17 (1st Cir. 1996) (explaining that generally, "an ALJ, as a lay person, is not qualified to interpret raw data in a medical record" unless a "commonsense judgment" can be made "without a physician's involvement").

      The ALJ stated that she "considered mental health treatment at APS and Inspira, which establish a mental health condition but support the findings in this case." (Tr. 25). But despite what was expressed, the ALJ did not actually incorporate Plaintiff's mental health progress notes in her analysis of the paragraph B criteria. She relied mostly on medical records of non-mental health physicians and, more importantly, could not cure the deficiency in the SAC's opinions by interpreting the 21 months of psychiatric notes. In the case of Rosa-Figueroa v. Commissioner, 2019 WL 5622593 (D.P.R. 2019), this District Court vacated the Commissioner's decision because the ALJ improperly substituted the medical opinion of experts for his lay opinion. In that case, the Commissioner argued that the ALJ could draw a conclusion without the assistance of a medical expert because terms like "cooperative," "euthymic," and "coherent," were easily understood by lay persons. In response to this argument, this District Court reasoned that "lay persons do not readily know what meaning psychiatrists and psychologists attach to these terms, particularly when those experts are evaluating an individual's mental health as it relates to 'cognitive difficulties,' 'thought process,' 'speech,' 'thought content,' 'insight,' or 'reliability.'" Rosa-Figueroa, 2019 WL 5622593 at *6. It was thus held that, as a lay person, the ALJ could not give meaning to the terms used by medical experts. Indeed, citing the Seventh Circuit Court of Appeals, this District Court stated that "[s]evere depression is not the blues. It is a mental illness; and health professionals, in particular psychiatrists, not lawyers or judges, are the experts on it." Id. (citing Wilder v. Chater, 64 F.3d 335, 337 (7th Cir. 1995)) see also Salmond v. Berryhill, 892 F.3d 812, 818 (5th Cir. 2018) (citing Morales v. Apfel, 225 F.3d 310, 319 (3rd Cir. 2000) ("The principle that an ALJ should not substitute his lay opinion for the medical opinion of experts is especially profound in a case

involving a mental disability.")). The ALJ's decision on the severity of Plaintiff's mental condition was significantly based on the opinions of SAC who rendered opinions based on a materially incomplete file. By assessing Plaintiff's psychiatrists' evaluations and progress notes from a 21-month period, the ALJ incorrectly rendered a medical opinion as a lay witness.

### 2. The Mental RFC

An ALJ's error at step two could be considered harmless if "it is clear from the record that the ALJ thoroughly considered claimant's non-severe impairments and discussed each at length in reaching the conclusion that none adversely affected her residual function capacity." Mason v. Astrue, 2013 WL 391173 at *4 (D.N.H.)(citing 20 C.F.R. §404.1545(A)(2); Montoere v. Commissioner, 2012 DNH 131 at *10 ("a Step 2 error is harmless if the ALJ continued through the remaining steps and considered all of the claimant's impairments"); Gould v. Astrue, 2012 WL 5378967 (D.N.H.)(Step 2 error is not grounds for reversal where the ALJ "continued through the remaining steps and considered all of the claimant's impairments."). The ALJ continued the sequential evaluation until step four. However, contrary to the case law cited above, the ALJ's flawed analysis at step two in this case was not cured by a thorough analysis of the effects that Plaintiff's mental impairment had on Plaintiff's RFC. This merits reversal.

The ALJ acknowledged her duty to consider both severe and non-severe impairments in the formulation of the RFC (Tr. 23) and in the RFC section stated that she had considered all of Plaintiff's symptoms (Tr. 26). But, in practice, she failed to do so. A boilerplate assertion without analyzing impairments in the RFC determination is insufficient. See Smith v. Saul, 2019 WL 5957294 at *4 (D.N.H.) ("this court has consistently ruled that a 'boilerplate assertion that an ALJ considered all of the claimant's impairments in combination, without describing any actual analysis, is insufficient'")(citing Lavoie v. Colvin, 2016 WL 3554963, at *4 (D.N.H.)). The ALJ did not discuss Plaintiff's depression in her RFC determination. The decision merely states that Plaintiff initially alleged marked restrictions of activities of daily living, social functioning, maintaining concentration, persistence or pace (Tr. 27); and without any further analysis, the ALJ concluded that even though Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's own statements regarding the intensity, persistence and limiting effects of her symptoms were not entirely consistent "for the reasons explained in this decision." Id.

12

Even though an ALJ is certainly not required to find a limitation for each impairment, each impairment must at the very least be *considered* in the assessment of the RFC. See Leech v. Berryhill, 2017 WL 2817023, at *4 (D. Me.) (requiring that all of a claimant's medically determinable impairments, including those that are non-severe, be considered in assessing functional restrictions at Step 4); Cooley v. Saul, 2020 WL 5406044, at *4–5 (D.N.H.) (ALJ's failure to consider non-severe impairments when addressing the RFC is reversible error); Lavoie, 2016 WL 3554963, at *3 (remanding when ALJ failed to consider non-severe impairments in addressing the RFC); Golden v. Colvin, 2013 WL 5278743, at *3 (N.D.N.Y.); McMichael v. Colvin, 2016 WL 4556768, at *4 (M.D.N.C.) (the ALJ's failure to account for mild limitations in the RFC requires remand). The ALJ's failure to even mention Plaintiff's depression while formulating the RFC in this case is fatal. See Smith, 2019 WL 5957294 at *4-5 (citing Lavoie, 2016 WL 3554963, at *3-4 (holding that ALJ's failure to mention claimant's depression at the RFC stage suggests it was "impermissibly dropped" from the analysis and thus the RFC decision was not supported by substantial evidence).

## CONCLUSION

In sum, the ALJ's determination was not based on substantial evidence: the conclusion at step two that Plaintiff's mental condition was non-severe was based primarily on medical records of non-mental health physicians and on the opinions of non-treating SAC who failed to consider at least 21 months of Plaintiff's psychiatric treatment. The ALJ's error at step two was not harmless because it could not be remedied by merely continuing the sequential analysis. It required a thorough consideration of Plaintiff's mental impairments, which is noticeably absent from the RFC determination made by the ALJ.

For the reasons stated above, the Commissioner's decision is **REVERSED,** and the case is **REMANDED** pursuant to sentence four of 42 U.S.C. §405(g) for further administrative action consistent with this opinion.

Judgment is to be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 31st day of August 2021.

s/Giselle López-Soler
GISELLE LÓPEZ-SOLER
United States Magistrate Judge